IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| FIDELITY MANAGEMENT TRUST COMPANY, as Collateral Agent for Mellon Bank, N.A., as Trustee of Bell Atlantic Master Trust with Respect to Account C<br><br>Plaintiff,<br>v.<br><br>RICCARDO OLIVIERI, an individual<br><br>Defendant. | Civil Action No. 04-cv-11873 NMG |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFF FIDELITY MANAGEMENT TRUST COMPANY'S MOTION TO VACATE REMOVAL AND FOR REMAND**

Plaintiff Fidelity Management Trust Company ("Fidelity"), as collateral agent and investment manager and not individually, on behalf of Mellon Bank, N.A. ("Mellon"), as Trustee of the GTE Service Corporation Plan for Employees' Pensions Trust with respect to Account No. 176230 ("GTE Pensions Trust"), *n/k/a* the Bell Atlantic Master Trust with respect to Account C ("Bell Atlantic Master Trust," collectively with GTE Service Corporation, "Purchasers") hereby submits this Memorandum of Law in Support of its Motion to Vacate Removal and for Remand. Pursuant to the forum selection clause contained in the guaranty made by Defendant Riccardo Olivieri in favor of Fidelity and the Purchasers, Fidelity possesses the right to select the forum in which to bring any claim on the guaranty and this Court should accordingly vacate removal and remand the above captioned action to state court.  Further, as outlined below, the litigation between Fidelity and Riccardo Olivieri, neither of which are debtors in any bankruptcy proceeding, is not a "core" proceeding under 28 U.S.C. § 157 and is not subject to a bankruptcy

LIBA/1412340.1                                          1

court's "related to" jurisdiction under 28 U.S.C. § 157(c).  Accordingly, a bankruptcy court lacks subject matter jurisdiction over this matter under 28 U.S.C. § 1334.  Because of the forum selection clause and because a bankruptcy court lacks jurisdiction over this matter, this matter should be remanded to the Business Litigation Session of the Superior Court for the Commonwealth of Massachusetts.

## INTRODUCTION

On July 15, 2004, Fidelity filed an action (the "State Court Action") against Riccardo Olivieri in the Business Litigation Session of the Superior Court for the Commonwealth of Massachusetts, seeking to recover the monetary value of Mr. Olivieri's personal obligations pursuant to a valid, binding and enforceable guaranty agreement (as more specifically defined herein, the "Guaranty") executed by Mr. Olivieri in favor of Fidelity and the Purchasers.  The State Court Action raises purely state law claims governed by Massachusetts law.  Mr. Olivieri subsequently removed the action to the United States District Court for the District of Massachusetts[1] with the stated intention of transferring the case to the United States Bankruptcy Court for the Southern District of Florida.

As detailed below, the State Court Action should be remanded because, under the Guaranty, Fidelity possesses the express contractual right to elect to bring any suit arising out of the Guaranty in *either* the courts of the Commonwealth of Massachusetts *or* the courts of the United States of America for the Commonwealth of Massachusetts; and Mr. Olivieri, by virtue of entering into the Guaranty with Fidelity, waived his right to challenge Fidelity's forum selection.

Further, Mr. Olivieri's claim that the allegations in the State Court Action arise in or relate to the bankruptcy proceeding of Florida Development Associates, Ltd. ("FDA") in the

---

[1] Mr. Olivieri claims to have removed the State Court Action simultaneously to the Bankruptcy Court for the District of Massachusetts.  The matter, however, is docketed in federal district court.

Southern District of Florida is simply baseless. The chapter 11 proceeding in Florida concerns FDA and its affiliates, while the non-core State Court Action involves the Guaranty personally signed by Mr. Olivieri in his individual capacity, relates solely to Mr. Olivieri (a non-debtor party), and in no way affects FDA, its bankruptcy estate or its creditors. As the State Court Action is a non-core proceeding (as conceded by Mr. Olivieri) and is not "related to" FDA's bankruptcy proceeding, the Bankruptcy Court lacks subject matter jurisdiction over the State Court Action.

## BACKGROUND

On July 15, 2004, Fidelity commenced the State Court Action by filing its Complaint to Enforce Guaranty against Mr. Olivieri in the Business Litigation Session of the Superior Court for the Commonwealth of Massachusetts. The State Court Action arose out of Mr. Olivieri's failure to perform certain obligations pursuant to a valid, binding and enforceable personal guaranty made by Mr. Olivieri for the benefit of Fidelity and the Purchasers to which Fidelity serves as Collateral Agent.

Mr. Olivieri is president of Bentley Bay G.P. Corp. ("Bentley Bay"), a Florida corporation. Bentley Bay, in turn, is the general partner of Florida Development Associates, Ltd. ("FDA" or the "Issuer"), a Florida limited partnership. In or around 2000, FDA undertook plans to construct luxury high rise condominiums in Miami Beach, Florida. The two buildings that comprise the condominium project are commonly known as the Bentley Bay condominiums.

### The Loans to FDA

In order to secure sufficient financing to construct the Bentley Bay condominiums, on or about December 6, 2000, FDA obtained a construction loan from Colonial Bank in the amount of $48,000,000. The loan was secured by a mortgage on the Bentley Bay condominium buildings

and property.  On the same day, FDA also entered into a series of transactions and agreements with the Purchasers and with Fidelity acting as investment agent and collateral agent on behalf of the Purchasers.  These transactions and agreements included (i) a Securities Purchase Agreement, (ii) a Promissory Note (the "Note"), (iii) a Pledge Agreement, and (iv) the Guaranty (collectively, the "Transaction Documents").  All of the Transaction Documents provided that they were governed by Massachusetts law.  Mr. Olivieri was a party to both the Securities Purchase Agreement and the Guaranty in his individual capacity.

The parties to the Securities Purchase Agreement were FDA, Mr. Olivieri, and the Purchasers.  By way of the Securities Purchase Agreement, FDA authorized the issuance and sale to the Purchasers of up to $14,500,000 of Notes.  The Securities Purchase Agreement further provided that all interests of the Purchasers in or with respect to the collateral for the Notes would be held by a Collateral Agent for the benefit of the Purchasers and further provided that Fidelity would act as initial Collateral Agent for such purpose.  Pursuant to the terms of the Securities Purchase Agreement, FDA, as maker, issued the Note, with a face value of $14,500,000 to the Purchasers as the Note holders.

<u>Mr. Olivieri's Personal Guaranty to Fidelity and the Purchasers</u>

Mr. Olivieri, in his individual capacity, executed the Guaranty as a Guarantor in favor of Fidelity and the Purchasers.  Section one of the Guaranty sets forth the scope of that guaranty:

> Subject to the provisions of Section 2 below, each Guarantor hereby irrevocably and unconditionally guaranties to the Collateral Agent and to the Purchasers and their successors and assigns, prompt and full payment and performance when due of all of the Issuer's present and future indebtedness and obligations to the Collateral Agent and the Purchasers under the Transaction Documents, including all principal and interest thereunder.

Guaranty at § 1 (Attached as Exhibit A).  Section two of the Guaranty further provides "[u]pon the occurrence of a Full Recourse Event, each Guarantor shall be jointly and severally liable for

all of the Obligations of the Issuer under the Transaction Documents." Id. at § 2. "Obligations" are defined as "prompt and full payment and performance when due of all of the Issuer's present and future indebtedness and obligations to the Collateral Agent and the Purchasers under the Transaction Documents, including all principal and interest thereunder." Id. at § 1. Under the Guaranty, a "Full Recourse Event" includes when the Issuer, without prior written consent of the Authorized Holder, commences a bankruptcy proceeding. Id. at § 2(f). The Guaranty is governed "pursuant to the law of The Commonwealth of Massachusetts." Id. at § 16.

<u>FDA's Bankruptcy Triggering Mr. Olivieri's Personal Guaranty</u>

On March 12, 2004, FDA filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida. FDA's bankruptcy filing was a Full Recourse Event under § 2 of the Guaranty. Accordingly, Mr. Olivieri, as a Guarantor under the Guaranty, is jointly and severally liable for all of the Obligations of FDA under the Transaction Documents. On July 31, 2003, FDA failed to make its scheduled payment to the Purchasers pursuant to § 3.2 of the Note and is in default under the Note.

<u>Fidelity on Behalf of Purchasers Filed Suit Against Mr. Olivieri Personally In Massachusetts State Court Pursuant to the Guaranty's Forum Selection Clause</u>

Subsequently, Fidelity filed suit against Mr. Olivieri in the Business Litigation Session of the Superior Court for the Commonwealth of Massachusetts to collect on the Guaranty. The forum selection clause contained in the Guaranty states:

> Each Guarantor hereby irrevocably submits, for itself and in respect of its assets and property, generally and unconditionally, *at the election of the Collateral Agent*, to the jurisdiction of the courts of The Commonwealth of Massachusetts or of the United States of America for The Commonwealth of Massachusetts over any suit, action or proceeding arising out of or relating to this Guaranty. Each Guarantor *irrevocably waives, to the fullest extent permitted by law, any objection* which it may now or hereafter have to the venue or jurisdiction of any

> such suit, action or proceeding brought in any such court, including, without limitation, that any such suit, action or proceeding brought in any such court claim has been brought in an inconvenient forum.

Id. at § 17 (emphasis added).

In response to Fidelity's Complaint, Mr. Olivieri filed a Notice of Removal in this Court. In the Notice of Removal, Mr. Olivieri admitted that the State Court Action was "non-core" (Notice of Removal at ¶ 7) but nevertheless stated his intention to have the action transferred to the United States Bankruptcy Court for the Southern District of Florida and consolidated with FDA's Chapter 11 proceeding.

## ARGUMENT

I.   <u>Mr. Olivieri Expressly Agreed to Allow Fidelity to Select a Court to Resolve Any Disputes Related to the Guaranty</u>.

Under the Guaranty, Mr. Olivieri expressly submitted, "at the election of" Fidelity, "to the jurisdiction of the courts of The Commonwealth of Massachusetts or of the United States of America for The Commonwealth of Massachusetts over any suit, action or proceeding arising out of or relating to" the Guaranty. Id. at § 17. By agreeing to this forum selection clause, which permits Fidelity to select either a state or federal court in Massachusetts to hear any dispute involving the Guaranty, Mr. Olivieri waived any right to remove the State Court Action.

"A party to a contract may waive a right of removal provided that the other party to the contract has 'the right to choose the forum' in which any dispute will be heard." Waters v. Browning-Ferris Indus., Inc., 252 F.3d 796, 797 (5th Cir. 2001) (quoting City of Rose City v. Nutmeg Ins. Co., 931 F.2d 13, 16 (5th Cir. 1991)). Courts repeatedly have recognized that a party to a contract has waived its right to removal where a forum selection clause allows the other party to the contract to select either the state or federal court in a particular state to hear any dispute arising out of that contract. See, e.g., GP Plastics Corp. v. Interboro Packaging Corp.,

2004 WL 1627240 at *4 (5th Cir. 2004) (ruling that Interboro waived its "removal rights" where contract's forum selection clause provided that "the state or federal court of Texas selected by" GP Plastics shall have jurisdiction); Waters, 252 F.3d at 798 (concluding that Waters negotiated with Brown-Ferris "a clear right to establish 'irrevocably' the place where his suit could be filed and heard" based on forum selection clause under which Brown-Ferris agreed that Waters could sue it in either state or federal court in Texas, consented to the jurisdiction of any such court, and waived any objection to venue in any court in Texas); Snapper, Inc. v. Redan, et al., 171 F.3d 1249, 1260 (11th Cir. 1999) (holding that guarantors "waived the right to remove" based on clause stating that they submitted to jurisdiction of and waived any rights based on domicile "in the courts of the State of Georgia or the United States District Court, Northern District of Georgia, Atlanta Division" for any legal action related to the contract).[2]

      The facts of this case mirror the facts of GP Plastics, Waters, and Snapper. First, Mr. Olivieri agreed to a valid, binding obligation under the Guaranty. See GP Plastics, 2004 WL 1627240 at *1 ("pursuant to written sales-purchase contract" Interboro agreed to buy plastic bags from GP Plastics); Waters, 252 F.3d at 796-97 (under an "Amended and Restated Agreement Respecting Employment between Waters and BFI, Waters became entitled to receive an Annual Retirement Payment" from BMI); Snapper, 171 F.3d at 1251 (officers of KPM and their spouses of KPM entered into "six identical security agreements, pursuant to which each individual assumed personal liability for all of KPM's obligations to Snapper.")

---

[2]    Courts also find a waiver of removal under even broader forum selection clauses, where one party, in the event of certain disputes, has agreed to "submit to the jurisdiction of any court of competent jurisdiction within the United States" at the request of the other party. See, e.g., Foster v. Chesapeake Ins. Co., Ltd., 933 F.2d 1207, 1216-17 (3d Cir. 1991) (emphasis added); Archdiocese of Milwaukee v. Underwriters at Lloyd's, London, 955 F. Supp. 1066, 1068-69 (E.D. Wisc. 1997); Welborn v. Classic Syndicate, Inc., 807 F. Supp. 388, 389, 391 (W.D.N.C. 1992).

Second, the Guaranty contains a forum selection clause allowing Fidelity to bring an action in either state or federal court in Massachusetts.  See GP Plastics, 2004 WL 1627240 at *1 (quoting forum selection clause); Waters, 252 F.3d at 797 (same); Snapper, 171 F.3d at 1260 (same).  Third, Fidelity exercised its right under the forum selection clause by choosing state court.  See GP Plastics, 2004 WL 1627240 at *1 (GP "sued Interboro in Texas state court"); Waters, 252 F.3d at 797 ("Waters filed suit in the 23rd Judicial District of Wharton County, Texas"); Snapper, 171 F.3d at 1252 (Snapper "instituted this litigation in the Superior Court of Georgia, Dekalb County on a $647,160.46 debt of KPM, naming the Guarantors, but not KPM, as defendants.").

Just as the courts in GP Plastics, Waters, and Snapper concluded that the defendants in the state court actions had waived their respective rights to removal under the forum selection clauses in their respective contracts, Mr. Olivieri waived his right to removal by agreeing to the clause in the Guaranty granting Fidelity the right to choose the forum, either state or federal court in Massachusetts, in which any dispute will be heard.

The Guaranty's Forum Selection Clause Is Reasonable

Mr. Olivieri has neglected to set forth any basis on which this Court could find the Guaranty's forum selection clause to be invalid.  In fact, Mr. Olivieri failed even to mention or address the Guaranty's forum selection clause in his Notice of Removal.

In M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1 (1972), the United States Supreme Court held that forum selection clauses are "prima facie valid and should be enforced unless enforcement is shown by the resisting party to be 'unreasonable' under the circumstances." Id. at 10.  See also Cambridge Biotech Corp. v. Pasteur Sanofi Diagnostics, 433 Mass. 122, 130 (2000) (noting that Massachusetts Supreme Judicial Court had "accepted the modern view that a

forum selection clause should be enforced so long as it is fair and reasonable to do so."). "A forum selection clause is 'unreasonable' where the defendant can make a 'strong showing' *either* that the forum thus selected is 'so gravely difficult and inconvenient that he will for all practical purposes be deprived of his day in court,' *or* that the clause was procured through 'fraud or overreaching.'" Foster v. Chesapeake Ins. Co., Ltd., 933 F.2d 1207, 1219 (3d Cir. 1991) (quoting M/S Bremen, 407 U.S. 15, 18) (emphasis in original). Mr. Olivieri made no showing of either of these elements – let alone a strong showing – and could not have made such a showing had he attempted to do so. First, Mr. Olivieri "irrevocably" waived any objection as to the inconvenience of the forum. Guaranty at § 17. Second, the forum selection clause in the Guaranty was negotiated as part of an arm's length business deal between sophisticated parties represented by counsel. Fidelity and the Purchasers should not be denied the benefit of the bargain they struck because Mr. Olivieri is now dissatisfied with the terms of the agreement he freely negotiated.

The introductory paragraph of the Guaranty tellingly states that "[t]he Guarantors have executed and delivered this Guaranty for the purpose of inducing the Purchasers to purchase the Notes and Fidelity . . . as the collateral agent . . . to accept security therefor." Guaranty at 1. Fidelity and the Purchasers would not have extended the loan to FDA without the inducement of the Guaranty by Mr. Olivieri. FDA benefited from this bargain, as did Mr. Olivieri in his capacity as the principal of FDA, receiving a loan that enabled it to fund the construction of the Bentley Bay Towers. To now deny Fidelity of the ability to avail itself of a Massachusetts court would expose Fidelity to the very risk that it expressly protected itself against by virtue of the Guaranty's forum selection clause. Having received his benefit as a result of the bargain, Mr. Olivieri should not be permitted now to deny Fidelity its corresponding benefit.

Further, the forum selection clause is reasonable given Massachusetts' relationship to the dispute. Fidelity's offices and headquarters are in Massachusetts. The Transaction Documents were collected and held by Fidelity's counsel in Massachusetts, Mr. Olivieri's signatures on the Transaction Documents, other than the Note, were delivered to Fidelity in Massachusetts and Fidelity's decision to close on the Note and fund the Note purchase price was made in Massachusetts. Fidelity's decisions as discretionary investment manager, on behalf of GTE Pensions Trust, to authorize disbursements under the Securities Purchase Agreement and the Cash Management Agreement were also made in Massachusetts. Moreover, Mellon Bank has significant operations in Massachusetts, including its institutional trust business and trust administration operations.

The terms of the forum selection clause are clear. Fidelity has the right to choose the forum in which any disputes relating to the Guaranty will be heard and Mr. Olivieri waived any opportunity to challenge this selection. As there is no basis on which to conclude that enforcement of the forum selection clause would be "unreasonable," this Court should remand the case to the Business Litigation Session of the Superior Court for the Commonwealth of Massachusetts.[3]

II.     The Bankruptcy Court Lacks Subject Matter Jurisdiction as State Court Action Involves Non-Core Claims.

In the Notice of Removal, Mr. Olivieri concedes, as he must, that "[t]he State Court Action contains non-core claims." Notice of Removal at ¶ 7. In non-core proceedings, a court will enforce a forum selection clause and "uphold[] the parties' right to contractually decide where to litigate their pre-petition contractual disputes." In re N. Parent, Inc., 221 B.R. 609, 622

---

[3] Even if this Court finds that Mr. Olivieri did not waive his right to removal by signing the Guaranty, the case remains in Massachusetts. Under the plain terms of the forum selection clause, Mr. Olivieri submitted to the

(Bankr. D. Mass. 1998). "[O]nly those claims which are deemed to be core bankruptcy issues can remain in this Court; all non-core claims should be transferred or dismissed to give effect to the parties forum selection clause." Id.

Further, Fidelity does not consent to the entry of final orders of judgment by a bankruptcy judge in this matter, a factor that courts consider as counseling against transfer. See Hassan Abbey & Yussur Abrar v. Modern Africa One LLC, et al., 305 B.R. 594, 604 (D. D.C. 2004) (deciding against transfer of non-core proceedings because a "bankruptcy judge could only (in the absence of consent by the parties) exercise limited jurisdiction" and a district court judge would end up having to adjudicate the matter). In sum, Mr. Olivieri's admission that the State Court Action contains non-core claims proves fatal to his argument in favor of the removal and transfer of the action to the United States Bankruptcy Court for the Southern District of Florida.

III.   The Bankruptcy Court Lacks Subject Matter Jurisdiction, as the Non-Core State Court Action is Not Related to the Bankruptcy Case.

Mr. Olivieri claims that removal to a "United States Bankruptcy Court is appropriate" because the "allegations in the State Court Case arise in or relate to the Bankruptcy Case." Notice of Removal at ¶ 5. As a threshold matter, the State Court Action clearly does not "arise in" FDA's bankruptcy case. In re Santa Clara County Child Care Consortium, 223 B.R. 40, 43 n.3 (B.A.P. 1st Cir. 1998) ("Proceedings 'arising in' a bankruptcy case are those that are not based on any right expressly created by title 11, but nevertheless, would have no existence outside of the bankruptcy." (citations omitted)). As the State Court Action involves purely state law claims, as a matter of law, it cannot arise in FDA's bankruptcy.

---

jurisdiction of both federal and state courts in Massachusetts for any disputes arising out of the Guaranty and waived his right to challenge venue or jurisdiction in any such court.

Furthermore, the Bankruptcy Court has no subject matter jurisdiction over the State Court Action because that action does not relate to FDA's bankruptcy. "Related to" jurisdiction extends to matters concerned only with state law issues "that did not arise in the core bankruptcy function of adjudicating debtor-creditor rights." In re Santa Clara, 223 B.R. at 43 n.4 (citations omitted). In determining whether a case is related to a title 11 proceeding, courts in this Circuit ask if the outcome of the action "could conceivably have an effect on the estate being administered in bankruptcy." In re G.S.F. Corp., 938 F.2d 1467, 1475 (1st Cir. 1991) (reversed on other grounds); Pacor v. Higgins, 743 F.2d 984, 994 (3d Cir. 1984) (reversed on other grounds). Despite the broad language of this test, however, there still must be some nexus between the underlying action and the bankruptcy proceeding for jurisdiction to lie. In re Santa Clara, 223 B.R. at 45; Pacor, 743 F.3d at 994. That nexus is absent in this case.

### The State Court Action Involves Exclusively Massachusetts Law and Has No Nexus or Relationship to FDA's Bankruptcy

The State Court Action is purely a matter of Massachusetts contract law – it takes not the slightest familiarity with the Bankruptcy Code to resolve this dispute. Bankruptcy courts in this circuit have refused to exercise "related to" jurisdiction when the underlying claims involved matters based entirely on state law. For instance, in In re AK Services, Inc., 159 B.R. 76, 84 (Bankr. D. Mass. 1993), the court found that it had no jurisdiction, even applying the broad Pacor test, over purely state law pre-petition claims for breach of contract and violations of § 93A. See also Cenith Partners, L.P. v. Hambrecht & Quist, Inc. (In re VideOcart, Inc.), 165 B.R. 740, 744 (Bankr. D. Mass. 1994) (no "related to" jurisdiction over potential claim for contribution by defendant against debtor because claim did not have a sufficient effect on the administration of the estate).

Further, the First Circuit has considered the exact issue in this case, whether two non-debtor parties involved in a purely state law proceeding concerning a guaranty claim can ever create related to jurisdiction. Give that issue, the Bankruptcy Appellate Panel of the First Circuit, in <u>In re Santa Clara</u>, concluded that a non-core state court action based on a guaranty between non-debtor parties did not confer "related to" jurisdiction on a bankruptcy court. 223 B.R. at 49. In <u>In re Santa Clara</u>, the appellees argued that the bankruptcy court's decision to remand the action to state court should be affirmed because the declaratory judgment action in state court would "have no conceivable effect on the bankruptcy estate." <u>Id.</u> at 44. The Bankruptcy Appellate Panel agreed, concluding that the state court proceeding would "merely determine the validity and enforceability of a guaranty" and would "not have a substantial and direct financial impact upon the reorganization proceeding." <u>Id.</u> at 49. Similarly, the State Court Action brought by Fidelity against Mr. Olivieri will determine the validity and enforceability of a guaranty and will not have any financial impact on FDA's reorganization proceeding.

The chapter 11 proceeding in Florida concerns the corporate debtor FDA, while the Massachusetts State Court Action involves Mr. Olivieri in his individual capacity. Any judgment against Mr. Olivieri in the State Court Action would be paid out of Mr. Olivieri's personal assets and will have no impact on the assets of FDA or the claims of its creditors.

According to the terms of the Guaranty, Fidelity was not required to first proceed against FDA in order to collect on the Guaranty from Mr. Olivieri. Fidelity was not even required to file a proof of claim against FDA prior to enforcing the Guaranty against Mr. Olivieri. Under the Guaranty, which Mr. Olivieri signed as Guarantor in his individual capacity, Mr. Olivieri automatically became liable for FDA's obligations due to Fidelity upon occurrence of a Full Recourse Event, which is defined to include FDA's commencement of a bankruptcy proceeding.

See Guaranty at §§ 1, 2(f). By agreeing to allow Fidelity to bring an action in a Massachusetts court against Mr. Olivieri to collect on the Guaranty upon the initiation of a bankruptcy proceeding by FDA without requiring Fidelity to first proceed against FDA, the parties considered and anticipated that any proceeding involving Mr. Olivieri's Guaranty would be dealt with separately and apart from any bankruptcy proceeding involving FDA.

Indeed, the central purpose of including a forum selection clause in the Guaranty, mandating that Massachusetts state law govern the Guaranty and Massachusetts be the forum to resolve disputes, was to offer Fidelity some measure of protection against having to chase Mr. Olivieri around the world. The Guaranty was negotiated as part of a complex real estate loan involving sophisticated business people who had the benefit of counsel. As is clear from the Guaranty, the parties intended that any dispute involving the Guaranty would be dealt with in litigation separate from and unrelated to FDA's bankruptcy proceeding. Mr. Olivieri's attempt to transfer the case to the Bankruptcy Court by claiming that the State Court Action needs to be handled by the same court handling FDA's bankruptcy flies in the face of the forum selection clause and should be rejected.

IV.   Even if the Non-Core State Court Action Is Found to Be Properly Removed, the Court Should Remand the State Court Action On Equitable Grounds.

Under § 1452(b), the district court may remand the State Court Action to state court "on any equitable ground." This basis for removal is much broader than the general federal remand statute, 28 U.S.C. § 1447(c), which allows a plaintiff to remand a case only if removal was defective or if subject matter jurisdiction is lacking. See In re Hotel Mt. Lassen, Inc., 207 B.R. 935, 942 (Bankr. E.D.Cal. 1997) (noting that the bankruptcy remand statute was a congressional reversal of common law principles favoring jurisdiction). Courts have interpreted "any equitable ground" to mean that a reviewing court may remand under § 1452(b) on any appropriate ground.

Things Remembered, Inc. v. Petrarca, 516 U.S. 124, 133 (1995) (Ginsburg, J. concurring); In re United States Brass Corp., 110 F.3d 1261, 1265 (any equitable ground "means simply any appropriate ground.")

Massachusetts courts have identified seven factors to consider in determining whether or not to remand a case under 1452(a): 1) the effect of the action on the administration of the bankruptcy estate; 2) the extent to which issues of state law predominate; 3) the difficulty of applicable state law; 4) comity; 5) the relatedness or remoteness of the action to the bankruptcy estate; 6) the existence of a right to a jury trial; and 7) prejudice to the party involuntarily removed from state court. In re Santa Clara 223 B.R. at 46; In re VideOcart, 165 B.R. at 744.

These factors strongly militate in favor of remanding the State Court Action to the Superior Court. First, as discussed above, the State Court Action will have no effect on the administration of FDA's bankruptcy estate. See, e.g., In re Santa Clara, 223 B.R. at 49 (finding remand appropriate where outcome of state action will not have substantial and direct financial impact upon reorganization proceedings). Any recovery Fidelity obtains against Mr. Olivieri would come out of his personal assets and would have no impact on FDA, its assets or its creditors.

Next, not only does state law exclusively control in the State Court Action – there are no bankruptcy laws at issue. Fidelity's claims against Mr. Olivieri sound in Massachusetts contract law. All of Mr. Olivieri's purported defenses necessarily will be grounded in Massachusetts common law. Liability in this case will hinge on common law contract principles. Faced with a similar situation, Judge Feeney remanded a state law case to Superior Court, noting that "the action raises no bankruptcy issues, just factual and legal issues related to securities fraud, state consumer protection law and common law." In re VideOcart, 165 B.R. at 744. It makes no

sense for a bankruptcy judge in Florida to have to wade through purely Massachusetts state law matters, especially when the parties expressly agreed to a forum that is perfectly suited to the resolution of such issues.  Id. ("Comity and respect for the plaintiff's choice of forum outweigh any arguments advanced by defendants [seeking removal]"); see also United States Brass Corp., 110 F.3d at 1267 ("the bankruptcy jurisdiction hauls into federal court a host of state-law claims, and whatever the precise relief sought the court ought to have the power to return such a case to the state courts"); Renaissance Cosmetics, Inc. v. Oleg Cassini, Inc., 2000 WL 890191, *3 (S.D.N.Y. July 5, 2000) ("This is a state law action and a state court is better able to respond to a suit involving state law" (internal quotations omitted)).  Simply put, absent compelling reasons to the contrary, Massachusetts judges are in the best position to apply Massachusetts law.

Next, the notion of comity, that federal courts should respect the expertise that state courts have in developing state law and applying it to its citizens,[4] takes on heightened significance in the bankruptcy remand context.  Congress has written into law a mandatory abstention provision for certain "related to" cases, and it has specifically reminded district courts of their ability to voluntarily abstain from *any* removed bankruptcy case.  28 U.S.C. 1334(c)(1), (2).  Given this clear congressional mandate, the importance of comity as an equitable ground to remand is elevated.  In re AK Services, Inc., 159 B.R. at 83; Thomasson v. Amsouth Bank, N.A., 59 B.R. 997, 1002 (N.D.Ala. 1986).  Comity considerations are particularly acute in this case, where the expressly parties agreed that Massachusetts law would govern the Guaranty and negotiated a valid, binding and reasonable forum selection clause.

As to the fifth factor, the remoteness of the action to the bankruptcy proceeding, as explained above, the State Court Action involves two non-debtor parties and is not related to

---

[4]  See In re Chicago, Milwaukee, St. Paul & Pac. R.R. Co., 6 F.3d 1184, 1189 (7th Cir.1993).

FDA's bankruptcy estate and will not impact FDA or FDA's creditors. Only Mr. Olivieri and his personal assets will be affected by the State Court Action.

The existence of a right to a jury trial is not a factor that needs to be considered by this Court. Under the terms of the Guaranty, Mr. Olivieri waived any potential right to a jury trial. See Guaranty at §17.

As to the last factor, Fidelity will be prejudiced by being involuntarily removed from state court because it expressly contracted for the ability to avail itself of Massachusetts courts applying Massachusetts law. Forcing Fidelity to seek to collect on Mr. Olivieri's obligations in the context of the bankruptcy proceeding would deny it of the security that it had negotiated as a prerequisite to extending the loan to FDA.

Further, Mr. Olivieri's transparent effort to forum shop is certainly an equitable ground that warrants remand. See Lone Star Indus. v. Liberty Mutual Ins. Co., 131 B.R. 269, 275 (Bankr. D.Del. 1991) (any equitable ground suffices to remand; list of factors is merely illustrative). Under the Guaranty, Mr. Olivieri agreed to allow Fidelity to file suit against him in Massachusetts state court in the event that FDA filed for bankruptcy. The only circumstance that has changed between Mr. Olivieri's signing of the Guaranty and the Notice of Removal is FDA's filing for bankruptcy protection in Florida, an event that was clearly foreseen as a possibility and dealt with in the Guaranty. Fidelity should be allowed to litigate the State Court Action in state court, just as the parties originally intended. Cf. Lone Star Indus., 131 B.R. at 273 (remanding breach of contract action to state court because, inter alia, debtor originally chose state forum and "all of the circumstances [debtor] now argues support its decision to change forums were present when it originally chose the [state court] forum"). In addition, FDA's bankruptcy is pending before the United States Bankruptcy Court for the Southern District of Florida. The only issue

for a Massachusetts bankruptcy court to resolve if it retained jurisdiction would be the guaranty action, hardly a matter requiring the bankruptcy court's bankruptcy expertise.

Case 1:04-cv-11873-NMG     Document 7     Filed 09/21/2004     Page 18 of 19

## CONCLUSION

For the foregoing reasons, Fidelity requests this Court to grant its Motion to Vacate and for Remand of the State Court Action to the Business Litigation Session of the Superior Court for the Commonwealth of Massachusetts.

Respectfully submitted,

/s/ Brian H. Mukherjee
Anthony M. Feeherry, P.C. (BBO # 160860)
Brian H. Mukherjee, Esq. (BBO # 643954)
GOODWIN PROCTER LLP
Exchange Place
Boston, Massachusetts  02109
Telephone:  617-570-1000
Facsimile: 617-523-1231

Attorneys for Fidelity Management Trust Company, as Investment Manager and Collateral Agent and not Individually

Dated:  September 21, 2004