## GUARANTY

This Guaranty ("**Guaranty**") is made as of December [__], 2000, by RICCARDO OLIVIERI, with an address of 510 Ocean Drive, Miami Beach, Florida 33139 (the "**Guarantor**" and sometimes referred to herein in the plural as "**Guarantors**"). Pursuant to the Securities Purchase Agreement, (as amended or supplemented from time to time, the "**Securities Purchase Agreement**") dated as of the date hereof, among FLORIDA DEVELOPMENT ASSOCIATES, LTD., a Florida limited partnership, with a business address c/o Roth, Rousso & Benjamin, P.A., 9350 S. Dixie Highway, PH 2, Miami, Florida 33156 (the "**Issuer**"), the Guarantors and certain purchasers identified therein (the "**Purchasers**") the Purchasers have agreed to purchase from the Issuer, and the Issuer has agreed to issue and sell to the Purchasers, certain promissory notes issued by the Issuer in the aggregate original principal amount of Fourteen Million Five Hundred Thousand Dollars ($14,500,000.00) (together with all replacements, renewals and substitutions thereof, the "**Notes**"). The Guarantors have executed and delivered this Guaranty for the purpose of inducing the Purchasers to purchase the Notes and Fidelity Management Trust Company, with an address of 82 Devonshire Street, E15C, Boston, Massachusetts 02109, as the collateral agent (the "**Collateral Agent**") under that certain Collateral Agency Agreement, dated as of the date hereof, between it and the Purchasers, to accept security therefor. Except as otherwise indicated, capitalized terms used herein without definition shall have the respective meanings indicated in the Securities Purchase Agreement.

1.  Guaranty. Subject to the provisions of Section 2 below, each Guarantor hereby irrevocably and unconditionally guaranties to the Collateral Agent and to the Purchasers and their successors and assigns, prompt and full payment and performance when due of all of the Issuer's present and future indebtedness and obligations to the Collateral Agent and the Purchasers under the Transaction Documents, including all principal and interest thereunder. All such indebtedness and obligations are referred to in this Guaranty as the "**Obligations.**" Subject to the provisions of Section 2 below, each Guarantor's liability under this Guaranty is primary, direct and unconditional and may be enforced in full or in part, from time to time, after nonpayment or nonperformance by the Issuer of any of the Obligations beyond the expiration of any grace or cure period provided with respect to such nonpayment or nonperformance in the applicable Transaction Document, in each case without requiring the Collateral Agent to resort to any other person or entity, including, without limitation, the Issuer, or any other right, remedy or collateral, whether held as collateral for this Guaranty or any of the Obligations.

2.  Limitations on Recourse. Nothing in this Guaranty shall limit recourse hereunder against assets of a Guarantor which serve as collateral for Obligations.

Until the Issuer has demonstrated (such demonstration being referred to as the "**Presale Condition**") to the reasonable satisfaction of the Collateral Agent that the Issuer has satisfied

the condition to advances under the Senior Loan Documents relating to the sale of condominium units provided for in Section 10 of Article IV of the Construction Loan Agreement, unless and until a Limited Recourse Event or a Full Recourse Event shall have occurred, recourse to any assets of any Guarantor other than the collateral for Obligations shall be limited to the Future Advance Amount. If a default has occurred on the part of the Issuer or of any Guarantor under the Transaction Documents prior to satisfaction of the Presale Condition, the Guarantors' personal liability to the extent of the Future Advance Amount shall survive satisfaction of the Presale Condition unless such default is either cured before it constitutes an Event of Default or is waived by the Authorized Holders.

Except as provided in the preceding sentence, after the Issuer has satisfied the Presale Condition, unless and until a Limited Recourse Event or a Full Recourse Event shall have occurred, recourse to any Guarantor shall be limited to the collateral for Obligations.

Upon the occurrence of a Limited Recourse Event, unless and until a Full Recourse Event has occurred, the Collateral Agent shall have recourse against any Guarantor, in addition to any other recourse provided for hereunder, for the amount of any loss, damage, cost, expense, liability, claim or other obligation suffered or incurred by the Purchasers or the Collateral Agent arising out of or in connection with such Limited Recourse Event, including attorneys' fees and costs reasonably incurred in connection therewith or in enforcement of this Guaranty as a result thereof, and interest on such costs at the Default Rate.

Upon the occurrence of a Full Recourse Event, each Guarantor shall be jointly and severally liable for all of the Obligations of the Issuer under the Transaction Documents.

"**Future Advance Amount**" means the amount of all disbursements made by the Escrow Agent pursuant to the Cash Management Agreement among the Purchasers, UMB Bank, N.A., and the Issuer together with the amount equal to interest thereon at the rate applicable from time to time under the Notes, until all liability of the Guarantors under this Guaranty is satisfied.

"**Limited Recourse Event**" means (i) any unintentional distribution by the Issuer of any of its assets to any holder of an equity interest in the Issuer or any Related Party of the Issuer in violation of any Transaction Document, (ii) any unintentional payment by the Issuer to any Related Party of the Issuer in violation of any Transaction Document, (iii) any unintentional misapplication of funds of the Issuer in violation of any Transaction Document, (iv) any change by the Issuer of its name, identity or structure so as to make any financing statement filed to perfect a security interest granted under the Pledge Agreement misleading if the Issuer fails timely to cause a new financing statement sufficient to maintain the perfection of such security interest to be filed in all required filing offices, (v) any other action which causes any security interest granted under the Pledge Agreement to cease to be perfected if the Issuer fails to take such action as is required to maintain the perfection of such security interest, and (vi) any change by any pledgor under the Pledge Agreement which causes the

Pledgor to become a foreign corporation, foreign partnership, foreign trust or foreign person, as such terms are defined in Section 1445 of the Internal Revenue Code of 1986, as amended.

"**Full Recourse Event**" means the occurrence of any of the following:

(a) fraud or material misrepresentation by the Issuer or any Principal in or in connection with any Transaction Document;

(b) intentional violation of restrictions on payments or distribution of assets of the Issuer or any other misapplication of any assets of the Issuer;

(c) any other action taken by the Issuer, any Guarantor or any Principal in bad faith with a view to interfering with the rights of the Purchasers or the Collateral Agent;

(d) except as expressly permitted by the Transaction Documents, (i) the incurrence of any indebtedness of the Issuer for borrowed money (including without limitation lease financing) whether as primary obligor, guarantor or otherwise or (ii) any transfer, whether absolutely or as security, by the Issuer of any of its rights in the Property or any other assets of the Issuer or (iii) or any amendment of the Senior Loan Documents without the consent of the Purchasers except amendments which the Senior Lender is not prohibited from making under the terms of the Intercreditor Agreement between the Senior Lender and the Purchasers;

(e) failure of the Issuer to exercise its best efforts to take actions requested by the Collateral Agent pursuant to Sections 9.16 and 9.17 of the Securities Purchase Agreement;

(f) if the Issuer or any pledgor under the Pledge Agreement, without prior written consent of the Authorized Holders (i) makes or enters into or offers to make or enter into an assignment, trust, mortgage, composition, reorganization, extension or other similar scheme or arrangement with or for the benefit of creditors; (ii) applies for, consents to, or cooperates with any appointment of any receiver, trustee, liquidator, custodian or similar official for it or for all or any part of the Property, the collateral granted to Collateral Agent as security for the Notes or any other assets of the Issuer; (iii) commences, seeks relief under, consents to, or cooperates with any bankruptcy, insolvency, reorganization, arrangement, readjustment of debt, dissolution, custodianship, conservatorship, liquidation, rehabilitation, or similar proceeding relating to it, all or any part of its debt or to all or any part of the collateral granted to the Collateral Agent as security for the Notes or any other assets of the Issuer;

(g) the Issuer, any Guarantor or any pledgor under the Pledge Agreement, or any Affiliate of Issuer or of any Guarantor, on any basis other than a good faith dispute as to whether an Event of Default has occurred, opposes or defends against the

exercise by the Collateral Agent or the Purchasers of any of its or their remedies or material rights (as determined by the Collateral Agent in its reasonable discretion) under the Transaction Documents including, without limitation, appointment of a receiver upon the occurrence of an Event of Default, or at any time challenges the enforceability of any of the Transaction Documents, including without implied limitation, enforceability of the jurisdiction, venue, choice of law and forum provisions of the Transaction Documents, or asserts claims against the Collateral Agent or the Purchasers with respect thereto or in connection therewith;

(h)     the filing with any court of a complaint, motion or other request for a determination that the security interest granted in the Pledge Agreement is ineffective, invalid or otherwise inoperative, or is subordinate to any other claim or interest;

(i)     failure of the Guarantors to comply with their obligations under Section 12 of this Guaranty not cured within ten (10) days after receipt of written notice thereof;

(j)     the issuance of additional partnership and/or management interests in the Issuer; or

(k)     subject to the limitations below in this item (k), the acceleration of the Senior Loan or the failure of the Senior Lender to make reasonably timely additional advances thereunder if either such event is attributable to the violation of the Borrower or any obligor, without the prior written approval of the Collateral Agent, of any provision of any of the Senior Loan Documents which the Borrower or such obligor had the ability to perform, such as the modification or termination of purchase agreements for condominiums. The failure of the Borrower or any obligor on any Senior Loan Document to perform an obligation as a result of the unavailability of funds shall not constitute a Full Recourse Event under this item (k).

3.     Absolute Guaranty. This Guaranty is a guaranty of payment and performance and not of collection only. This Guaranty is a continuing, absolute and unconditional guaranty of the Obligations and shall not be affected by (i) the genuineness, validity, regularity or enforcement of all or any part of the Notes, the Obligations or any other Transaction Document, (ii) the existence, validity, enforceability, perfection or extent of any collateral for the Obligations, (iii) payment in full of the Notes, unless there remains no possibility of rescission of, or of any obligation to return, all or any portion of such payment under applicable law, or (iv) failure by the Purchasers to purchase all of the Notes at par, a cancellation of the availability of any proceeds of the purchase of the Notes or the inability of the Issuer or any Guarantor to receive any proceeds of the purchase of the Notes, pursuant to the terms of the Notes, the Securities Purchase Agreement or otherwise.

4. **No Release; Bankruptcy-Related Survival of Guaranty.** No Guarantor shall be released by, and each Guarantor hereby waives any claim, counterclaim or defense based on or otherwise involving, any act or thing that would constitute a legal or equitable discharge, including, without limitation, any change in the ownership of the Issuer, the transfer of any assets by the Issuer or any other matter that would constitute a defense available to the Issuer, other than payment and performance in full of the Obligations after expiration of any possibility of rescission of or of any obligation to return all or any portion of such payment or performance for any reason under applicable law. No Guarantor shall be released by the Collateral Agent's failure to proceed promptly. The Collateral Agent shall not be obligated to file any claim relating to all or any part of the Notes or the Obligations in the event that the Issuer or any person liable for obligations of the Issuer becomes the subject of any bankruptcy, insolvency, assignment for the benefit of creditors, arrangement, reorganization, composition, readjustment, liquidation, dissolution or other debtor relief proceeding, or if a receiver, custodian, liquidator, fiscal agent or trustee is appointed for any of them or their assets, in any case, under any federal or state law, whether now existing or hereafter enacted (each, a "**Bankruptcy Event**"), or in the event any of them becomes insolvent or unable to pay its or his debts when due, and the failure of the Collateral Agent to so file shall not affect any Guarantor's obligations hereunder. In the event that any payment made or performance rendered by or on behalf of the Issuer with respect to any of the Obligations is rescinded or otherwise must be returned for any reason under applicable law, notwithstanding anything to the contrary contained in this Guaranty or any other Transaction Document, each Guarantor shall remain liable hereunder with respect to any such payment or performance as if it had not been made or rendered, and each Guarantor's liability under this Guaranty shall survive termination or release of this Guaranty to the extent of all monies or other obligations due to the Collateral Agent under this Section. Each Guarantor shall indemnify and hold the Collateral Agent harmless from and against any and all costs, expenses, liabilities, damages and other losses, including, without limitation, attorneys' fees and disbursements, in connection with or as a result of the assertion of any and all claims for the return of monies or performance, including, without limitation, the proceeds of any collateral, regardless of the basis therefor and regardless of the outcome. Each Guarantor acknowledges that the Purchasers' purchase of the Notes from the Issuer and the Collateral Agent's dealings with the Issuer at all times prior to satisfaction of the Obligations were done and shall be done in part in reliance on this Guaranty.

5. **Liability for Other Obligations.** If any Guarantor is or becomes liable for any indebtedness or other obligations owing by the Issuer to the Collateral Agent or the Purchasers by endorsement or in a manner other than pursuant to this Guaranty, such liability shall not be in any manner impaired, limited or affected by this Guaranty. The rights of the Collateral Agent shall be cumulative of any and all other rights that the Collateral Agent or the Purchasers may ever have against any Guarantor. The exercise by the Collateral Agent of any right or remedy hereunder or under any other instrument, or at law or in equity, shall not preclude the concurrent or subsequent exercise of any other right or remedy. Without in any way diminishing the generality of the foregoing, it is specifically understood and agreed that

this Guaranty is given by each Guarantor as an additional guaranty to any and all other guaranties heretofore, herewith or hereafter executed and delivered to the Collateral Agent or the Purchasers by any guarantor in favor of the Collateral Agent or any Purchaser relating to indebtedness or other obligations of the Issuer to the Collateral Agent or the Purchaser, and nothing herein shall ever be deemed to replace or be in lieu of any of such other previous, concurrent or subsequent guaranties, as they may from time to time be amended or supplemented with the Collateral Agent's approval.

6. **Guarantors' Representations and Warranties and Certain Covenants.** Each Guarantor hereby represents and warrants to the Collateral Agent and agrees with the Collateral Agent as follows:

(a) Guarantor has received or will receive, direct or indirect benefit from the purchase of the Notes;

(b) The execution and delivery of this Guaranty by Guarantor and the performance of its obligations hereunder have been duly authorized by all necessary corporate action (if applicable) and Guarantor has all necessary power and authority to execute and deliver this Guaranty and to perform its obligations hereunder. This Guaranty has been duly executed and delivered by Guarantor and constitutes the legal, valid and binding obligation of Guarantor and is fully enforceable against Guarantor in accordance with its terms, subject to the effect of bankruptcy, insolvency or other similar laws affecting the rights of creditors generally and subject to limitations imposed by general principles of equity. The execution and delivery of this Guaranty or any other Transaction Documents executed and delivered by Guarantor, and the carrying out of the transactions contemplated hereby and thereby, will not conflict with, or result in a breach of, any term of any agreement, order, legal requirement or other matters to or by which Guarantor is bound;

(c) Any and all balance sheets, net worth statements and other financial data that have heretofore been given to the Collateral Agent or otherwise for the benefit of the Purchasers with respect to Guarantor fairly and accurately present the financial condition of Guarantor as of the date thereof including, without limitation, all contingent liabilities and, since the date thereof, there has been no material adverse change in the financial condition of Guarantor. Each Guarantor is, and as of the Closing will be, solvent and able to conduct its business and pay its debts as they become due. All assets listed on the financial statements of Guarantor delivered for the benefit of the Purchasers are owned by Guarantor individually, free and clear of any encumbrances, liens, claims or other rights, other than as listed on such financial statements;

(d) In addition to the reports and statements which must be provided on behalf of Guarantor to the Collateral Agent pursuant to the other Transaction

Documents, Guarantor hereby agrees to furnish to the Collateral Agent, within sixty (60) days after the end of each calendar year, current financial reports and statements setting out in complete and accurate detail Guarantor's financial condition at the end of such year in the same form and detail as the financial statements previously provided by Guarantor, together with a certification that there has been no material adverse change in the financial condition of the Guarantor since the date of such financial statements or, if there has been, stating the nature of any such changes. Guarantor also hereby agrees to furnish to the Collateral Agent from time to time such other financial information as Collateral Agent may reasonably require after receiving the aforesaid annual financial reports and statements in order to obtain a more complete understanding of such information;

(e)     There are no legal proceedings, claims or demands pending against, or, to the best of Guarantor's knowledge, threatened against, Guarantor or any of Guarantor's assets, which would, if adversely determined, have a material and adverse effect upon the ability of Guarantor to perform its obligations hereunder (any of the foregoing, a "Material Claim"). Guarantor hereby agrees to deliver written notice to the Collateral Agent of each Material Claim (including, without limitation, each Material Claim that consists of a threat) immediately upon becoming aware of such Material Claim or obtaining knowledge thereof.

7.     <u>Certain Rights of Collateral Agent</u>. Each Guarantor authorizes the Collateral Agent, in the Collateral Agent's discretion, at any time or from time to time, to amend, modify or otherwise alter, or consent to any amendment, modification or other alteration of, any of the terms and conditions of any of the Transaction Documents, including, without limitation, those respecting the Obligations, to take and to hold any security for the Obligations and to accept additional or substituted security for any of the Obligations, to subordinate, compromise or release any security for any of the Obligations, to release the Issuer from its liability for all or any part of the Obligations, to release any Guarantor hereunder, to substitute or add one or more guarantors or endorsers hereunder, to take and to hold any security for this Guaranty, to accept additional or substituted security for this Guaranty, to subordinate, compromise or release any security for this Guaranty and to endorse, assign or otherwise transfer this Guaranty in whole or in part. Each Guarantor authorizes the Collateral Agent to take any and all of the foregoing actions upon such terms and conditions as the Collateral Agent may elect, without giving notice to Guarantor or obtaining the consent of Guarantor and without affecting the liability of Guarantor to the Collateral Agent or the enforceability of this Guaranty or any security therefor.

8.     <u>Joint, Several and Independent Liability</u>. Subject to the limitations set forth in Section 2 above, the obligations of each Guarantor under this Guaranty and any other guarantor of all or any part of the Obligations are joint and several and independent of the obligations of the Issuer. The Collateral Agent may release or settle with the Issuer, any Guarantor or any other guarantor at any time without affecting the continuing liability of any

Guarantor, except as otherwise expressly agreed by the Collateral Agent. The Collateral Agent may proceed against any Guarantor under this Guaranty without first proceeding against the Issuer or any other Guarantor or person or any security held by the Collateral Agent and without pursuing any other remedy. The Collateral Agent's rights under this Guaranty will not be altered or exhausted by any action by the Collateral Agent until all of the Obligations have been paid, performed and satisfied in full and all continuing liability under this Guaranty has been fully terminated under Section 3. Upon (i) payment, performance and satisfaction in full of all of the Obligations or (ii) repayment in full of the entire outstanding balances of the Notes, including, without limitation, all redemption premiums thereunder, and all amounts due under this Guaranty, and, in all cases, termination of all continuing liability under this Guaranty under Section 3, the Collateral Agent shall deliver to any Guarantor written confirmation of the termination of this Guaranty upon such Guarantor's request.

        9.     Waiver of Indulgence. Each Guarantor waives notice of acceptance of this Guaranty and all presentment, demand, protest, notice of protest, notice of dishonor and notice of default of any Obligation guaranteed hereby and all other suretyship defenses generally. No extension of time, renewal, other indulgence or collateral granted by the Collateral Agent to the Issuer, any Guarantor under this Guaranty or any other guarantor under any other guaranty, at any time or from time to time, will release or affect the liability of any Guarantor hereunder. No act, omission or delay on the part of the Collateral Agent in exercising any rights hereunder or in taking any action to collect or enforce payment or performance of any of the Obligations shall be a waiver of any such right or release or affect the obligations of any Guarantor under this Guaranty. This Guaranty shall not be impaired by any bankruptcy, insolvency, arrangement, assignment for the benefit of creditors, reorganization or other debtor relief proceedings under any federal or state law, whether now existing or hereafter enacted, with respect to the Issuer, any Guarantor or any other guarantor or if for any other reason the Issuer or any other guarantor has no legal obligation to discharge any of the Obligations.

        10.    Subordination of Rights. Each Guarantor covenants and agrees that any indebtedness or other obligation of the Issuer to such Guarantor, or of one Guarantor to another, whether arising from payments made by a Guarantor pursuant to this Guaranty or otherwise, is hereby subordinated in all respects to the obligations of the Issuer under the Transaction Documents and that each Guarantor shall hold any funds received from the Issuer in trust for the Collateral Agent to satisfy the Obligations. This subordination of indebtedness and other obligations shall continue until all of the Obligations have been paid, performed and satisfied in full and all continuing liability under this Guaranty has been fully terminated under Section 3.

        11.    Event of Default. The following shall each constitute an "Event of Default" under this Guaranty: If any Guarantor fails to perform any of its monetary obligations under this Guaranty; if any Guarantor fails to perform any of its non-monetary obligations within fifteen (15) days after written notice; a default by the Issuer or any Guarantor under any

Transaction Document (which default continues beyond any applicable grace or cure period, if such Transaction Document provides for a grace or cure period in the event of such a default); or the occurrence of a Bankruptcy Event (as defined in Section 4) with respect to any Guarantor, unless such Bankruptcy Event shall be an involuntary proceeding on the part of such Guarantor, in which event such Bankruptcy Event shall not be an Event of Default if the same shall have been dismissed within sixty (60) days from the filing thereof.

12. Additional Rights Upon Event of Default. Following an Event of Default under any Transaction Document, the Guarantors shall cause the Issuer timely to comply with any and all written directions of the Collateral Agent with respect to any and all aspects of the business of the Issuer, including, without limitation, all activities and operations of the Issuer related in any way to the Property, the loan evidenced by the Senior Loan Documents, any litigation relating to any of the foregoing, any proceeding under the Federal Bankruptcy Code, and any action or proceeding under state law designed to stay, adjust or coordinate the enforcement of rights of creditors of the Issuer. If requested by the Collateral Agent, the Guarantors shall cause the Issuer to (i) hire or fire contractors, employees, consultants and other agents and determine and modify the terms of engagement of any of them, whether or not engaged prior to any Event or Default, (ii) commence, defend or settle litigation relating to rights or obligations of the Issuer, (iii) alter, lease, or sell any or all of the Property or any part thereof, (iv) pay, not pay (other than amounts then due and payable), refinance or amend the loan evidenced by the Senior Loan Documents as designated by the Collateral Agent, (v) commence, defend or settle any proceeding under the Federal Bankruptcy Code and any action or proceeding under state law designed to stay, adjust or coordinate the enforcement of rights of creditors of the Issuer and (vi) take such action in any such proceedings, including the filing of a plan or reorganization, as the Collateral Agent may request. The preceding list is intended to illustrate the types of actions which the Guarantors are required to cause the Issuer to take, and not intended to limit in any way the more general requirement of the first sentence of this Section 12. Any action taken by the Collateral Agent pursuant to this Section 12 may be taken in such manner as the Collateral Agent may deem appropriate, solely with a view to assuring payment of the Notes. Nothing in this Section 12 is intended to require the Guarantors to provide additional funds to the Issuer.

13. Cumulative Remedies. All remedies of the Collateral Agent against the Issuer and any Guarantor, whether under this Guaranty or any other Transaction Document or otherwise available at law or in equity, are separate and cumulative and are not exclusive, and exercise of any one shall not limit or prejudice exercise of any other. Without limiting the generality of the foregoing, each Guarantor agrees that if Guarantor fails to pay or perform any of the Obligations after demand by the Collateral Agent made when permitted under this Guaranty, the Collateral Agent shall be entitled to pay or perform or cause to be paid or performed such Obligations, and Guarantor shall reimburse the Collateral Agent on demand made by the Collateral Agent at any time or from time to time for all amounts expended or incurred by the Collateral Agent in paying or performing or causing to be paid or performed such Obligations, including, without limitation, attorneys' fees and disbursements and fees of

consultants and advisors. The Collateral Agent's costs and expenses shall include, without limitation, any costs and expenses that would be chargeable to the Issuer in the event the Collateral Agent exercised its remedy to perform the Issuer's obligations under the Transaction Documents.

14. **Expenses of Collection.** Each Guarantor shall pay to the Collateral Agent on demand any and all expenses paid or incurred by the Collateral Agent, including, without limitation, reasonable attorneys' fees and disbursements, in connection with the enforcement of this Guaranty. All amounts owed to the Collateral Agent under this Guaranty shall bear interest at the Default Rate (as such term is defined in the Notes) from the date due until paid.

15. **Entire Agreement.** The whole of this Guaranty is set forth herein, and there is no verbal or other written agreement, and no understanding or custom affecting the terms hereof. This Guaranty can be modified only by a written instrument signed by the party or parties to be charged.

16. **Interpretation and Binding Effect.** If any provision of this Guaranty shall be held to be prohibited or invalid under applicable law, such provision shall be ineffective only to the extent of such prohibition or invalidity, without invalidating the remainder of such provision or the remaining provisions of this Guaranty. This Guaranty shall be governed and construed pursuant to the laws of The Commonwealth of Massachusetts and shall take effect as a sealed instrument. The headings in this Guaranty are for convenience only and shall not be used in construing or interpreting this Guaranty. The obligations of each Guarantor shall be binding upon such Guarantor's heirs and legal representatives and any other legal successors and shall inure to the benefit of the successors and assigns of the Collateral Agent, including, without limitation, any participant or holder of any other interest in all or any part of the Notes or any principal for which the Collateral Agent acts as trustee or agent with respect to any Note. In this Guaranty, the singular shall include the plural, and each of the masculine, feminine and neuter shall include each of the others, as the context may require. Words such as "hereof", "herein", "hereunder" and "hereinafter" and similar words shall refer to this Guaranty as a whole, and not to the particular part thereof in which such words appear, unless the context requires otherwise. Each reference to "Guarantor" means to any Guarantor and to all Guarantors, if more than one.

17. **Consent to Jurisdiction and Waiver of Jury Trial.** Each Guarantor hereby irrevocably submits, for itself and in respect of its assets and property, generally and unconditionally, at the election of the Collateral Agent, to the jurisdiction of the courts of The Commonwealth of Massachusetts or of the United States of America for The Commonwealth of Massachusetts over any suit, action or proceeding arising out of or relating to this Guaranty. Each Guarantor irrevocably waives, to the fullest extent permitted by law, any objection which it may now or hereafter have to the venue or jurisdiction of any such suit, action or proceeding brought in any such court, including, without limitation, that any such suit, action or proceeding brought in any such court claim has been brought in an inconvenient forum. Each

Guarantor agrees that future judgment with no right of appeal remaining in any such suit, action or proceeding brought in any such court shall be conclusive and binding upon Guarantor and may be enforced in the courts of Massachusetts or elsewhere by a suit upon such judgment, a certified copy of which shall be conclusive evidence of the fact and of the amount of Guarantor's indebtedness or other obligation evidenced by the judgment, provided that service of process is effected upon Guarantor in one of the manners specified herein or as otherwise permitted by law. To the fullest extent permitted by law, each Guarantor hereby waives any right to trial by jury in connection with any matter involving any of the Notes or other Transaction Documents, any Permitted Encumbrances, the Property, the Collateral Agent or the Purchasers.

18. Service of Process. Each Guarantor hereby irrevocably consents to process being served in any suit, action or proceeding hereunder by personal service or, if such service is impossible or impracticable in the reasonable judgment of the party serving such process, by the mailing of a copy thereof by registered or certified mail, postage prepaid, return receipt requested, to Guarantor at its or his address set forth below or to any other address which Guarantor shall have designated by written notice to the Collateral Agent. Each Guarantor irrevocably waives, to the fullest extent permitted by law, all claims of error by reason of any such service and agrees that such service (i) shall be deemed in every respect effective service of process upon Guarantor in any such suit, action or proceeding and (ii) shall, to the fullest extent permitted by law, be taken and held to be valid personal service upon Guarantor. Nothing in this Section or Section 17 shall affect the rights of the Collateral Agent to serve process in any manner permitted by law or limit the right of the Collateral Agent to bring proceedings against any Guarantor in the competent courts of any jurisdiction or jurisdictions.

19. Notices. Any notice, demand or other communication under this Guaranty shall be in writing and shall be deemed delivered on the earlier to occur of (i) receipt or (ii) the date of delivery, refusal or non-delivery indicated on the return receipt, if deposited in a United States Postal Service depository, postage prepaid, sent registered or certified mail, return receipt requested, or if sent via a recognized commercial courier service providing for a receipt, addressed to the party to receive the same at the address of such party set forth below.

    If to the Collateral Agent:    Fidelity Management Trust Company
                                            82 Devonshire Street, E15C
                                            Boston, MA 02109-3614
                                            Attention: Mr. Thomas P. Lavin

    with a copy to:               Fidelity Management & Research Company
                                            82 Devonshire Street, E20E
                                            Boston, MA 02109-3614
                                            Attention: Travis M. Rhodes, Esq.

|  |  |
|---|---|
| and: | Goodwin, Procter & Hoar LLP<br>Exchange Place<br>Boston, MA 02109-2881<br>Attention: Paul D. Schwartz, P.C. |
| If to any Guarantor: | 510 Ocean Drive<br>Miami Beach, FL 33139<br>Attention: Riccardo Olivieri |
| with a copy to: | Levine & Partners, P.A.<br>1110 Brickell Avenue, 7th Floor<br>Miami, FL 33131<br>Attention: Alan W. Levine, Esq. |

Any party may, from time to time, change the address at which such written notices, demands or other communications are to be sent by giving the other party written notice of such change addressed in the manner hereinabove provided. Notwithstanding anything to the contrary contained in this Guaranty, notice to the Issuer by the Collateral Agent of any default under any of the Notes, if given with such copies as provided for in the Notes, shall satisfy any express or implied obligation of the Collateral Agent to deliver notice to each Guarantor.

EXECUTED as an instrument under seal as of the date first above written.

GUARANTOR:

_____
Riccardo Olivieri