**IN THE UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| FIDELITY MANAGEMENT TRUST COMPANY, as Collateral Agent for Mellon Bank, N.A., as Trustee of Bell Atlantic Master Trust with Respect to Account C )<br><br>Plaintiff, )<br>v. )<br><br>RICCARDO OLIVIERI, an individual )<br><br>Defendant. ) | Civil Action No. 04-cv-11873 NMG |

**PLAINTIFF FIDELITY MANAGEMENT TRUST COMPANY'S OPPOSITION TO DEFENDANT'S MOTION TO TRANSFER VENUE**

Plaintiff Fidelity Management Trust Company ("Fidelity"), as collateral agent and investment manager and not individually, on behalf of Mellon Bank, N.A. ("Mellon"), as Trustee of the GTE Service Corporation Plan for Employees' Pensions Trust with respect to Account No. 176230 ("GTE Pensions Trust"), *n/k/a* the Bell Atlantic Master Trust with respect to Account C ("Bell Atlantic Master Trust," collectively with GTE Service Corporation, "Purchasers") hereby submits its Opposition to Defendant Riccardo Olivieri's Motion to Transfer Venue.

**INTRODUCTION**

As an initial matter, Fidelity notes that its Motion to Vacate Removal and for Remand is currently pending before this Court. Fidelity respectfully submits that the Motion to Vacate Removal and for Remand, which was filed on September 21, 2004, should be decided prior to Mr. Olivieri's Motion to Transfer Venue.

On July 15, 2004, Fidelity filed an action (the "State Court Action") against Riccardo Olivieri in the Business Litigation Session of the Superior Court for the Commonwealth of Massachusetts, seeking to enforce Mr. Olivieri's personal obligations pursuant to a valid, binding and enforceable guaranty agreement (as more specifically defined herein, the "Guaranty") executed by Mr. Olivieri in favor of Fidelity and the Purchasers with respect to a $14,500,000 Promissory Note. The State Court Action raises purely state law claims governed by Massachusetts law. Mr. Olivieri subsequently filed the necessary papers in an attempt to remove the action to the United States District Court for the District of Massachusetts with the stated intention of transferring the case to the United States Bankruptcy Court for the Southern District of Florida. Mr. Olivieri's Motion to Transfer is but his latest attempt to avoid his contractual obligations under the Guaranty, delay the resolution of this dispute, and engage in forum-shopping.

Pursuant to the forum selection clause contained in the Guaranty made by Mr. Olivieri in favor of Fidelity and the Purchasers, Fidelity possesses the right to select the forum in which to bring any claim on the Guaranty. Further, as outlined below, the litigation between Fidelity and Mr. Olivieri, neither of which are debtors in any bankruptcy proceeding, is not a "core" proceeding under 28 U.S.C. § 157 and is not subject to a bankruptcy court's "related to" jurisdiction under 28 U.S.C. § 157(c). Accordingly, a bankruptcy court lacks subject matter jurisdiction over this matter under 28 U.S.C. § 1334.

In addition, the United States Bankruptcy Court for the Southern District of Florida has already *denied* Mr. Olivieri's motion to intervene in the very same bankruptcy proceedings that he claims are related to this lawsuit. The Bankruptcy Court's decision was based, in part, on the fact that this lawsuit based on the Guaranty was already pending in Massachusetts. Because of

2

the forum selection clause, because a bankruptcy court lacks jurisdiction over this matter, and because the Bankruptcy Court in the Southern District of Florida has already denied Mr. Olivieri's motion to intervene, this Court should likewise deny the Motion to Transfer Venue.

### STATEMENT OF REBUTTAL FACTS

In his Memorandum of Law in Support of Motion to Transfer Venue, Mr. Olivieri makes several misleading statements of "fact." First, Mr. Olivieri suggests that "[e]xcept for [Fidelity] being located in Massachusetts, neither of the parties nor the transaction at issue has any connection or relation to Massachusetts." Mem. Law at 2. As support for this claim, he asserts that neither the "Creditor" or the "Debtor" are Massachusetts companies. Id. As an initial matter, this is not a bankruptcy proceeding and the citizenship of any purported "Debtor" is irrelevant. Mr. Olivieri, in his individual capacity as Guarantor, is the defendant in this case, not Florida Development Associates, Ltd. ("FDA"), the debtor whose bankruptcy case is pending in Bankruptcy Court in Miami.

Mr. Olivieri is president of Bentley Bay G.P. Corp. ("Bentley Bay"), a Florida corporation. Bentley Bay, in turn, is the general partner of Florida Development Associates, Ltd. ("FDA" or the "Issuer"), a Florida limited partnership. In or around 2000, FDA undertook plans to construct luxury high rise condominiums in Miami Beach, Florida. The two buildings that comprise the condominium project are commonly known as the Bentley Bay condominiums. On March 12, 2004, FDA filed a voluntary petition for relief under chapter 11 of the United States Bankruptcy Code in the United States Bankruptcy Court for the Southern District of Florida.

<u>The Loans to FDA</u>

As part of the financing for the construction of the Bentley Bay condominiums, on or about December 6, 2000, FDA entered into a series of transactions and agreements with the

Purchasers and with Fidelity acting as investment agent and collateral agent on behalf of the Purchasers. These transactions and agreements included (i) a Securities Purchase Agreement, (ii) a Promissory Note (the "Note"), (iii) a Pledge Agreement, and (iv) the Guaranty (collectively, the "Transaction Documents"). All of the Transaction Documents provided that they were governed by Massachusetts law. Mr. Olivieri was a party to both the Securities Purchase Agreement and the Guaranty in his individual capacity.

The parties to the Securities Purchase Agreement were FDA, Mr. Olivieri, and the Purchasers. By way of the Securities Purchase Agreement, FDA authorized the issuance and sale to the Purchasers of up to $14,500,000 of Notes. The Securities Purchase Agreement further provided that all interests of the Purchasers in or with respect to the collateral for the Notes would be held by a Collateral Agent for the benefit of the Purchasers and further provided that Fidelity would act as initial Collateral Agent for such purpose. Pursuant to the terms of the Securities Purchase Agreement, FDA, as maker, issued the Note, with a face value of $14,500,000 to the Purchasers as the Note holders. After disbursements in the amount of $10,044,849.68 were made to FDA, the balance of the funds available, in the amount of $4,445,150.32, were disbursed to an escrow agent. All such funds held by the escrow agent were disbursed to FDA on or before July 2, 2001 and Fidelity never refused an FDA request for a disbursement.

Mr. Olivieri's Personal Guaranty to Fidelity and the Purchasers

Mr. Olivieri, in his individual capacity, executed the Guaranty as a Guarantor in favor of Fidelity and the Purchasers. Section one of the Guaranty sets forth the scope of that guaranty:

> Subject to the provisions of Section 2 below, each Guarantor hereby irrevocably and unconditionally guaranties to the Collateral Agent and to the Purchasers and their successors and assigns, prompt and full payment and performance when due of all of the Issuer's present and future indebtedness and obligations to the

4

>Collateral Agent and the Purchasers under the Transaction Documents, including all principal and interest thereunder.

Guaranty at § 1.  Section two of the Guaranty further provides "[u]pon the occurrence of a Full Recourse Event, each Guarantor shall be jointly and severally liable for all of the Obligations of the Issuer under the Transaction Documents." Id. at § 2.  "Obligations" are defined as "prompt and full payment and performance when due of all of the Issuer's present and future indebtedness and obligations to the Collateral Agent and the Purchasers under the Transaction Documents, including all principal and interest thereunder." Id. at § 1.  Under the Guaranty, a "Full Recourse Event" includes when the Issuer, without prior written consent of the Authorized Holder, commences a bankruptcy proceeding. Id. at § 2(f).  The Guaranty is governed "pursuant to the law of The Commonwealth of Massachusetts." Id. at § 16.

### Massachusetts' Connections

The Massachusetts' connections in this guaranty suit are much more extensive than Defendant will admit.  Fidelity does not just have an office in Massachusetts, it maintains its principal place of business and headquarters there.  See Affidavit of Jeffrey M. Tapley at ¶ 5, attached as Exhibit A to Fidelity's Reply to Defendant's Opposition to Motion to Vacate Removal and for Remand.  In addition, the Transaction Documents evidencing the loan from GTE Pensions Trust to FDA were drafted, collected, assembled and held by Fidelity's counsel in Massachusetts and Mr. Olivieri's signatures on the Transaction Documents, other than the promissory note (the "Note") issued by FDA in favor of GTE Pensions Trust, were delivered to Fidelity in Massachusetts.  See id. at ¶¶ 9-10.  Fidelity's decision to close on the Note and fund the Note purchase was made in Massachusetts.  See id. at ¶ 11.  Fidelity signed the transaction documents outside of Florida.  See id. at ¶ 8.  Mr. Olivieri physically signed the Note on behalf of FDA in New York at the branch offices of Fidelity's counsel and delivered the Note to

5

Fidelity's counsel in those offices. See id. at ¶ 12. Moreover, Fidelity's decisions as discretionary investment manager, on behalf of GTE Pensions Trust and Bell Atlantic Master Trust, to authorize disbursements under the Securities Purchase Agreement and the Cash Management Agreement were also made in Massachusetts. See id. at ¶ 13.

More importantly, Mr. Olivieri agreed to the forum selection clause in the Guaranty, a clause which he now only selectively quotes from. See Mem. of Law at 2. The forum selection clause in its entirety states:

> Each Guarantor hereby irrevocably submits, for itself and in respect of its assets and property, generally and unconditionally, ***at the election of the Collateral Agent***, to the jurisdiction of the courts of The Commonwealth of Massachusetts or of the United States of America for The Commonwealth of Massachusetts over any suit, action or proceeding arising out of or relating to this Guaranty. Each Guarantor ***irrevocably waives, to the fullest extent permitted by law, any objection*** which it may now or hereafter have to the venue or jurisdiction of any such suit, action or proceeding brought in any such court, including, without limitation, that any such suit, action or proceeding brought in any such court claim has been brought in an inconvenient forum.

Guaranty at § 17 (emphasis added).

Mr. Olivieri also erroneously claims that the "transaction itself was undertaken to satisfy certain equity requirements regarding the development of the Property." Mem. Law at 2. Fidelity extended a loan to FDA and did not make an equity investment in FDA. From the closing of the loan in December 2000, throughout the construction phase of the Bentley Bay project, and into the chapter 11 bankruptcy filings, all parties, including the Debtors themselves, have consistently treated and reported the Fidelity loan to FDA as debt. Mr. Olivieri has put forth no facts to support his claim that Fidelity's loan was an equity investment in the Bentley Bay project, instead relying on vague conclusory allegations.

6

Mr. Olivieri also claims that he will raise the same arguments in defense of the claims in the Guaranty suit as the Debtors are setting forth in the Adversary Proceeding in Florida,[1] which was filed "on July 20, 2004, prior to service of Fidelity's complaint" in this case. As noted above, the United States Bankruptcy Court for the Southern District of Florida already has denied Mr. Olivieri's motion to intervene in the Adversary Proceeding. In addition, Defendant's statement ignores a key piece of information – Fidelity filed its complaint in the Guaranty suit on July 15, 2004, *prior* to FDA's initiation of the adversary proceeding against Fidelity in the Bankruptcy Case. See Tapley Aff. at ¶ 16. Finally, Mr. Olivieri's counterclaims, which raise the same challenges to the loan as the Debtors raise in the Adversary Proceeding, were not included in Mr. Olivieri's original Answer and appeared in his Amended Answer and Counterclaims only after Fidelity filed its Motion to Vacate Removal and for Remand, which asserted that the Guaranty suit and the Adversary Proceeding were not related.

## ARGUMENT

I.  Mr. Olivieri Expressly Agreed to Allow Fidelity to Select Either Federal or State Court in Massachusetts to Resolve Any Disputes Arising Out of the Guaranty.

As an initial matter and as previously explained by Fidelity, see Mem. Law in Support of Mot. for Remand at 6 – 10, under the forum selection clause in the Guaranty Mr. Olivieri waived his right to removal. Thus, this case belongs in the Business Litigation Session of the Superior Court for the Commonwealth of Massachusetts and his Motion to Transfer is moot.

As set forth in detail in Fidelity's Memorandum of Law in Support of Motion for Remand at 6 – 8, it is clear that "[a] party to a contract may waive a right of removal provided the provision of the contract makes clear that the other party to the contract has 'the right to

---

[1] On July 20, 2004, FDA sued Fidelity, in its capacity as investment manager and collateral agent for Bell Atlantic, in the United States Bankruptcy Court for the Southern District of Florida. FDA claimed that

choose the forum' in which any dispute will be heard." Waters v. Browning-Ferris Indus., Inc., 252 F.3d 796, 797 (5th Cir. 2001) (quoting City of Rose City v. Nutmeg Ins. Co., 931 F.2d 13, 16 (5th Cir. 1991)). Courts repeatedly have recognized that a party to a contract has waived its right to removal where a forum selection clause allows the other party to the contract to select either the state or federal court in a particular state to hear any dispute arising out of that contract. See Mem. Law in Support of Mot. for Remand at 6 – 8.

Under the Guaranty, Mr. Olivieri expressly submitted, "at the election of" Fidelity, "to the jurisdiction of the courts of The Commonwealth of Massachusetts or of the United States of America for The Commonwealth of Massachusetts over any suit, action or proceeding arising out of or relating to" the Guaranty. Id. at § 17. By agreeing to this forum selection clause, which unequivocally permits Fidelity to select either a state or federal court in Massachusetts to hear any dispute involving the Guaranty, Mr. Olivieri waived any right to remove the State Court Action.

Mr. Olivieri argues that he "has not, by this language, further agreed that Massachusetts is the exclusive forum for any action arising out of or relating to the Guaranty and therefore is not barred from moving to transfer venue." Mem. Law at 4 – 5. Mr. Olivieri's argument ignores the next sentence in the Guaranty's forum selection clause, which states that Mr. Olivieri "irrevocably waives, to the fullest extent permitted by law, any objection which it may now or hereafter have to the venue or jurisdiction of any such suit, action or proceeding brought in any such court, including, without limitation, that any such suit, action or proceeding brought in any such court claim has been brought in an inconvenient forum." Guaranty at § 17. Under the first sentence of the forum selection clause, Mr. Olivieri agreed to allow Fidelity to select between

---

Fidelity's loan was in fact an equity investment, that the loan was usurious, and that based on Fidelity's conduct the loan should be equitably subordinated.

two designated fora for any disputes arising out of the Guaranty and, under the second sentence of the forum selection clause, he waived any objection he had to that selection.

    II.    <u>Even Under the § 1404(a) Analysis, the Forum Selection Clause Is of Central Importance</u>.

Should this Court decide to reach Mr. Olivieri's Motion to Transfer Venue, the Guaranty's forum selection mandates that the motion be denied. Mr. Olivieri argues that "Fidelity's choice of forum should be afforded little deference" and that the court should instead focus on "the convenience of the witnesses and the interests of justice." Mem. Law at 5. This is not an accurate portrayal of the law.

"Under Section 1404(a), the court should consider 'the convenience of parties and witnesses' and 'the interest of justice,' with a choice of forum clause 'a *significant* factor that figures *centrally* in the district court's calculus.'" <u>P & S Bus. Mach., Inc. v. Canon USA, Inc.</u>, 331 F.3d 804, 807 (11th Cir. 2003) (quoting <u>Stewart Org., Inc. v. Ricoh Corp.</u>, 487 U.S. 22, 29 (1988)). "Thus, while other factors might 'conceivably' militate against a transfer . . . the venue mandated by a choice of forum clause rarely will be outweighed by other 1404(a) factors." <u>Id.</u> (quoting <u>In re Ricoh Corp.</u>, 870 F.2d 570, 573 (11th Cir. 1989)).

Mr. Olivieri has failed to carry his burden of demonstrating that the forum selection clause should not be enforced. The one case that he cites as support for his argument that "an exclusive forum selection clause would not be dispositive of this Court's discretion to transfer," Mem. Law at 5, <u>New Medico Assoc., Inc. v. Kleinhenz</u>, 750 F. Supp. 1145 (D. Mass. 1990), is distinguishable from the case at bar. In that case, the District Court determined that the forum selection clause at issue should be given "less weight" than "a fully negotiated provision" because the clause appeared in "standard form contracts submitted to the defendants for their signature several weeks after they had left their previous jobs and commenced working for the

9

plaintiff" and which they were instructed to sign and return "immediately." Id. at 1146. In contrast, the forum selection clause contained in the Guaranty was not part of a standard form contract. Rather, the Guaranty, and the forum selection clause contained therein, were negotiated as part of an arm's length business deal between sophisticated parties represented by counsel. Fidelity and the Purchasers should not be denied the benefit of the bargain they struck because Mr. Olivieri is now dissatisfied with the terms of the agreement he freely negotiated.

The introductory paragraph of the Guaranty tellingly states that "[t]he Guarantors have executed and delivered this Guaranty for the purpose of inducing the Purchasers to purchase the Notes and Fidelity . . . as the collateral agent . . . to accept security therefor." Guaranty at 1. Fidelity and the Purchasers would not have extended the loan to FDA without the inducement of the Guaranty by Mr. Olivieri. FDA benefited from this bargain, as did Mr. Olivieri in his capacity as the principal of FDA, receiving a loan that enabled it to fund the construction of the Bentley Bay Towers. To now deny Fidelity of the ability to avail itself of a Massachusetts court would expose Fidelity to the very risk that it expressly protected itself against by virtue of the Guaranty's forum selection clause. Having received his benefit as a result of the bargain, Mr. Olivieri should not be permitted now to deny Fidelity its corresponding benefit.

In addition, the other cases that Mr. Olivieri cites to support his transfer of venue argument are inapposite to the facts of this case. Neither Liggett Group, Inc. v. R.J. Reynolds Tobacco Co., 102 F. Supp. 2d 518 (D.N.J. 2000) nor Subaru of New England, Inc. v. Subaru of Augusta, 121 F.R.D. 1 (D. Mass. 1988) involved a forum selection clause. As a result, they offer no guidance to this Court on the effect to be given to a forum selection clause in considering a motion to transfer.

Further, Fidelity, through the forum selection clause in the Guaranty, chose to bring suit in its home forum, a forum intimately related to the facts of this lawsuit.  Contrary to Mr. Olivieri's claims, Fidelity is not "only the nominal plaintiff."  Fidelity, as discretionary investment manager, possesses complete authority under its investment management agreement with Bell Atlantic Master Trust to manage and invest the assets of the investment account.  Fidelity employees negotiated the terms of and signed the Transaction Documents evidencing the loan to FDA and the Guaranty signed by Mr. Olivieri.  Thus, the forum selection clause is reasonable given Massachusetts' relationship to the dispute.  See Mem. Law in Support of Mot. Remand at 10 (describing facts evidencing Massachusetts' relationship to the transaction); Fidelity's Reply to Def. Opp. to Mot. to Vacate Removal and for Remand at 1 – 3 (same).

Mr. Olivieri's contention that the Bell Atlantic Master Trust is engaged in forum shopping borders on the absurd.  Mr. Olivieri has never dealt with anyone from Bell Atlantic Master Trust regarding the loan to FDA or the Guaranty and, at all times, has dealt with employees and representatives of Fidelity, which is headquartered in Massachusetts.  Mr. Olivieri, represented by counsel in an arms length business transaction, freely agreed to allow Fidelity to bring suit in Massachusetts on any dispute arising out of the Guaranty.  Fidelity is merely attempting to enforce a contractual forum selection clause in its home forum.  The only party engaged in a transparent attempt at forum shopping, in an effort to avoid his contractual obligations, is Mr. Olivieri.

III.     The Convenience of the Witnesses Does Not Weigh in Favor of Transfer.

Mr. Olivieri signed the Guaranty in his individual capacity and there will be a limited need for additional witnesses from Florida to participate in this Guaranty suit, which deals only with Mr. Olivieri's obligations under the Guaranty.  This Court should reject any argument by

Mr. Olivieri that his Counterclaims question the validity of the underlying loan and will require additional witnesses regarding the loan and the project. Mr. Olivieri, in a blatant attempt to manufacture a link between the two suits, only filed his Amended Answer and Counterclaims, the first document in which he raised the Counterclaims questioning the validity of the loan, after Fidelity, in its Motion to Vacate Removal and for Remand, pointed out to this Court that the Guaranty suit was not related to the bankruptcy proceeding and would have no effect on the assets in that proceeding and that the Bankruptcy Court lacked jurisdiction over the Guaranty suit.

Mr. Olivieri's argument that all of the witnesses will already be participating in the Adversary Proceeding in the Bankruptcy Court for the Southern District of Florida "during both the discovery and trial stages" is also not persuasive. Even if all of the witnesses that Mr. Olivieri lists are actually needed for discovery and trial in the Guaranty suit, a large percentage of those witnesses, specifically Fidelity's employees, work and reside in Massachusetts. In fact, up until this point in the Adversary Proceeding, more witnesses have been deposed in Massachusetts than in Florida. And, as the Court is aware, there exist well-settled procedures for dealing with unavailable witnesses should the need arise.

  IV. <u>The Interests of Justice Mandate that this Court Enforce the Forum Selection Clause and Deny the Motion to Transfer Venue</u>.

The interests of justice require that the Guaranty suit remain in Massachusetts because the Bankruptcy Court lacks subject matter jurisdiction over the Guaranty suit, the forum selection clause so dictates, and the Bankruptcy Court has already denied Mr. Olivieri's motion to intervene in the Adversary Proceeding.

### The State Court Action Involves Exclusively Massachusetts Law and Has No Nexus or Relationship to FDA's Bankruptcy

As set forth in Fidelity's Memorandum of Law in Support of Motion to Vacate Removal and for Remand at 10 – 14, the Bankruptcy Court has no subject matter jurisdiction over the Guaranty suit because that action does not relate to FDA's bankruptcy.  Because the State Court Action concerns a matter of Massachusetts contract law and bankruptcy courts in this circuit have refused to exercise "related to" jurisdiction over cases involving purely state law claims, this Court should deny the Motion to Transfer in the interests of justice.  See In re AK Services, Inc., 159 B.R. 76, 84 (Bankr. D. Mass. 1993) (finding no jurisdiction over purely state law pre-petition claims for breach of contract and violations of § 93A); Cenith Partners, L.P. v. Hambrecht & Quist, Inc. (In re VideOcart, Inc.), 165 B.R. 740, 744 (Bankr. D. Mass. 1994) (no "related to" jurisdiction over potential claim for contribution by defendant against debtor because claim did not have a sufficient effect on the administration of the estate).  In considering the same issue as currently before the Court in this case, the Bankruptcy Appellate Panel of the First Circuit, in In re Santa Clara County Child Care Consortium, 223 B.R. 40, 49 (B.A.P. 1st Cir. 1998), concluded that a non-core state court action based on a guaranty between non-debtor parties did not confer "related to" jurisdiction on a bankruptcy court.  See Mem. Law in Support of Mot. to Vacate Removal and for Remand at 12 – 13.

The chapter 11 proceeding in Florida concerns the corporate debtor FDA, while the Massachusetts Guaranty suit involves Mr. Olivieri in his individual capacity.  Any judgment against Mr. Olivieri in the State Court Action would be paid out of Mr. Olivieri's personal assets and will have no impact on the assets of FDA or the claims of its creditors.[2]

---

[2] In support of his argument for transfer Mr. Olivieri again relies on a case that harms his argument more than it helps.  While Mr. Olivieri is correct in stating that the court in Industri & Skipsbanken A/S v. Levy, 183 B.R. 58, (S.D.N.Y. 1995) granted the motion of the defendant guarantors to transfer the case to an ongoing

13

<u>The Guaranty Dictates That This Action Remain in Massachusetts</u>

Under the Guaranty, which Mr. Olivieri signed as Guarantor in his individual capacity, the parties considered and anticipated that any proceeding involving Mr. Olivieri's Guaranty would be dealt with separately and apart from any bankruptcy proceeding involving FDA. <u>See</u> Mem. Law in Support of Mot. to Vacate Removal and for Remand at 13 – 14. The Guaranty was negotiated as part of a complex real estate loan involving sophisticated business people who had the benefit of counsel and Mr. Olivieri has offered no justification for allowing him to avoid his contractual commitments. Under the Guaranty, Mr. Olivieri agreed to allow Fidelity to select the forum in which any dispute related to the Guaranty would be heard and waived his right to challenge that selection. The interests of justice require that this Court hold Mr. Olivieri to the commitments he made in the Guaranty.

<u>The Bankruptcy Court Has Already Denied Mr. Olivieri's Efforts to Become Involved in the Adversary Proceeding in his Individual Capacity</u>

In addition, Fidelity filed its Complaint based on the Guaranty in the Business Litigation Session of the Superior Court for the Commonwealth of Massachusetts prior to the filing of the Adversary Proceeding against Fidelity in the Bankruptcy Court. Based in part of this fact, the Bankruptcy Court recently denied Mr. Olivieri's motion to intervene in the Adversary Proceeding. These circumstances further indicate that the interests of justice require the Guaranty suit to remain in Massachusetts.

---

bankruptcy proceeding in another jurisdiction. However, the court did not grant the motion to transfer so that the bankruptcy court could rule on the guaranty at issue. Rather, in the interests of justice, the district court granted the motion to transfer only after granting summary judgment to the plaintiff on the issue of the guarantors' liability under the guaranty. <u>Id.</u> at 63, 65.

LIBA/1435542.1

## **CONCLUSION**

For the foregoing reasons, Fidelity requests this Court to deny Mr. Olivieri's Motion to Transfer Venue.

Respectfully submitted,

/s/ Brian H. Mukherjee
Anthony M. Feeherry, P.C. (BBO # 160860)
Brian H. Mukherjee, Esq. (BBO # 643954)
GOODWIN PROCTER LLP
Exchange Place
Boston, Massachusetts  02109
Telephone:  617-570-1000
Facsimile: 617-523-1231

Attorneys for Fidelity Management Trust Company, as Investment Manager and Collateral Agent and not Individually

Dated:  December 2, 2004